IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| J.L., as next friend of K.L., a minor,<br><br>　　Plaintiff,<br><br>　v.<br><br>Timothy Vess Benton et al.,<br><br>　　Defendants. | 6:20-cv-01309-LSC |

**MEMORANDUM OF OPINION**

This case presents disturbing facts. At Hubbertville High School in Fayette County, Timothy Vess Benton sexually assaulted thirteen-year old K.L. An erstwhile Hubbertville student, Benton apparently served as a volunteer coach for some of the athletic teams. On behalf of K.L., J.L. sued several defendants—including the Fayette County Board of Education. J.L. alleges that the Board violated 42 U.S.C. § 1983 by failing to properly train school personnel in sexual abuse prevention. Emphasizing the limited circumstances in which municipalities can be liable under a failure-to-train theory, the Board has moved for summary judgment. For the following reasons, the Board's motion is due to be granted.

I.  **Background**[1]

In the spring of 2017, Benton sexually assaulted K.L. in a bathroom at Hubbertville High School during school hours.[2] (Doc. 62-10 at 5.) For this crime and others, Benton is now serving a 17-year prison sentence. (*See* doc. 62-11 at 3.) Benton's precise role at the school is unclear. During the 2016-2017 school year, he was sometimes present at athletic practices and events. (*See* doc. 62-12 at 6–7.) Although never formally approved as a volunteer, he ostensibly served as a *de facto* assistant coach. (*See* doc. 62-5 at 61–80.)

In accordance with the Board's policy manual, the school required visitors to report to the front office, sign in, and obtain a badge. (Doc. 62-5 at 9–10.) The Board's policy manual and handbook address sexual assault of students and provide a mechanism for students to report abuse. (*See* doc. 62-2 at 81–82, 121–122; doc. 62-19 at 56–58.) As required by state law, the Board also provided "Erin's Law" training, which is designed to help school personnel recognize the signs of child

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

[2] Benton graduated from Hubbertville in 2015, and his younger brother was a student during the 2016-2017 school year. (Doc. 62-11 at 4 & 11.)

abuse. (*See* doc. 62-4 at 6.) J.L., however, asserts that the training and policies did not target "grooming" or other characteristics of potential child predators. (Doc. 65 at 6.) This lack of training, he argues, gave Benton the opportunity to assault K.L.

## II.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal*

*Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III.   Analysis

Under 42 U.S.C. § 1983, municipalities and other local governments are not vicariously liable for the transgressions of their employees. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, local governments are

only accountable for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To succeed on a § 1983 failure-to-train claim, plaintiffs must clear a high bar. *See id.* ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.") A local government will only face liability if its failure to train amounts to "deliberate indifference" to the rights of others. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (internal citations omitted). The Supreme Court, however, left the door ajar for "single-incident" liability "in a narrow range of circumstances." *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997); *see also Connick*, 563 U.S. at 64 ("The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.").

The Supreme Court has never confirmed the validity of "single-incident" liability, but it "hypothesized" its existence in a consequential footnote to *City of Canton v. Harris*. *See Connick*, 563 U.S. at 63. This footnote intimated that a city would be "deliberately indifferent" to constitutional rights if it failed to teach armed police officers the proper limitations on the use of deadly force because the need for such training is obvious. *See Canton*, 489 U.S. at 390 n.10.

Here, the Board did not manifest "deliberate indifference" to the rights of K.L. Crucially, the Board lacked notice of a particular need for additional training as there was no pattern of prior constitutional violations. The record reveals no instance of a visitor sexually assaulting a student at a Fayette County School.[3] "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Recognizing the absence of a pattern of constitutional violations, J.L. contends that this case falls into the rare category of "obvious" cases where "single-incident" liability is appropriate. Heeding the admonitions of the Supreme Court, this Court

---

[3] In 2012, at a different Fayette County school, an employee and a student had an off-campus relationship. This incident is not similar enough to have put the Board on notice. Of course, both crimes are heinous; however, prevention of an off-campus relationship would involve very different training than prevention of sexual assault by school visitors and volunteers. *See Connick*, 563 U.S. at 62–63.

disagrees. As noted, *Canton*'s "single-incident" hypothetical describes an anomalous situation. "Armed police must sometimes make split-second decisions with life-or-death consequences" when they attempt to arrest fleeing suspects. *Id.* at 64. Meanwhile, the Constitution's circumscription of deadly force is far from intuitive, and "[t]he *Canton* hypothetical assumes that the armed police officers have no knowledge at all" of the proper legal standard. *Id.* at 67. The officers' need for some type of training is "obvious."

In contrast, J.L. cannot establish "that the risk that [someone] would engage in this kind of conduct was so obvious that it required additional training or supervision." *Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1190 (8th Cir. 2019). While the parties dispute some details of the visitor policy, the school required visitors to enter at the front office, sign in, and obtain a visitor badge. It is not obvious that additional measures were necessary to prevent visitors from sexually assaulting students. Furthermore, sexual abuse of students is clearly wicked conduct, so any school employee would know such conduct is forbidden and to report any red flags. Perhaps the Board could have trained employees more thoroughly in identifying "grooming" and other warning signs, but Section 1983 "does not provide plaintiffs or courts *carte blanche* to micromanage local governments throughout the United States." *Connick*, 563 U.S. at 68. Mandating additional training on the psychology

of child predators might be prudent, but it is not patently obvious that such specialized training is necessary to prevent the assault of a student by a school visitor or volunteer. A contrary conclusion would violate the spirit of *Monell* and its progeny by weakening the "deliberate indifference" standard in failure-to-train cases.[4]

## IV.   Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is due to be granted. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on September 16, 2022.

_____
L. Scott Coogler
United States District Judge
211211

---

[4] In addition to the question of culpability, a plaintiff "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan Cnty.*, 520 U.S. at 404. J.L. cannot satisfy this "rigorous" standard of causation. *Id.* at 405. Even if the Board had acted (or failed to act) with the necessary degree of culpability, Benton's despicable act entails that J.L. cannot "demonstrate a direct causal link" between the Board's conduct and K.L.'s injury. *Id.* at 404. While it is conceivable that the Board could have prevented K.L.'s assault through better protocols, one cannot say the Board's inaction was the "moving force" behind the assault. *See Connick*, 563 U.S. at 68 ("[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct will not suffice.") (internal citations omitted); *see also id.* at 76 (Scalia, J., concurring).